1  Trenton R. Kashima, Esq. (State Bar No. 291405)
2  **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN PLLC**
3  401 West Broadway, Suite 1760
   San Diego, CA 92101
4  Tel: (212) 946-8389
   Email: tkashima@milberg.com
5
6  *Attorney for Plaintiffs and the Proposed Class*
7  [Additional counsel listed on signature page]

8              **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  JUSTIN DAVIS and GARY DAVIS, individually and on behalf of all others similarly situated, | Case No.: |
| 11 | **CLASS ACTION COMPLAINT FOR:** |
| 12              Plaintiffs, | 1. Violation of Cal. Bus. & Prof. Code §§17200, *et seq.*; |
| 13      v. | 2. Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*; |
| 14  HP, INC. d/b/a HP COMPUTING AND PRINTING INC., a Delaware Corporation, | 3. Violation of Cal. Civ. Code §§ 1750 *et seq.*; |
| 15 | 4. Violation of 815 ILCS 505/1, *et seq.*; |
| 16              Defendant. | 5. Breach of Express Warranty; |
| 17 | 6. Breach of Implied Warranty; and |
| 18 | 7. Unjust Enrichment |
| 19 | **JURY TRIAL DEMANDED** |

20
21
22
23
24
25
26
27
28

1

**CLASS ACTION COMPLAINT**

Plaintiffs Justin Davis and Gary Davis (collectively "**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this class action against Defendant, HP, Inc. d/b/a HP Computing and Printing Inc. ("**Defendant**" or "**HP**"), and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is a national consumer class action lawsuit involving HP, one of the largest PC manufacturers in the world, and the defective trackpads in its premium HP Omen line of laptops produced in 2021 and 2022 (the "Omen Laptops" or the "Products").   Consumers purchase premium laptops like the Omen series seeking a streamlined, high-end experience on top of the convenience and portability of laptop computers generally.   The defect at issue, however, significantly diminishes the laptops' purportedly high-end experience *and* their portability.   The trackpads at issue are so defective that the Omen laptops are rendered completely unusable unless users purchase and connect an external mouse to use the computer at all.

2.     During the Class Period, HP manufactured, marketed and sold HP Omen laptop computers with defective trackpad input devices. The HP Omen laptops are defectively designed and manufactured because the trackpad component can cause the onscreen cursor to: (a) track in reverse, *e.g.* the cursor moves in a direction opposite to the user's input; (b) freeze or fail to register user input; (c) engage in erratic behavior such as randomly opening and closing windows and programs; and/or (d) the clicking function of the track pad degrades until it becomes useless (the "Defect").

3.     The Defect renders the premium-priced Omen laptops useless for their intended purpose of mobile computing. Computer operating systems use and rely on a "graphical user interface" (or "GUI")—comprised of visual windows, folders and files that can be moved and accessed with trackpad movements and clicks. The Omen Defect makes this GUI—and consequently the computer itself—unusable.

4.     HP knew or should have known about the Defect in the Omen laptops because of numerous consumer complaints to HP and the hundreds of consumer complaints lodged with

CLASS ACTION COMPLAINT

technical and computing websites. Yet, HP has remained silent about the Defect while consumers continue to purchase its Omen laptops and encounter the defective trackpads. Had Plaintiffs and other proposed Class Members known of the Defect, they would not have purchased an HP Omen laptop, or would have paid significantly less.

5.     HP has failed to recall the defective Omen laptops, amend applicable warranties, or reimburse consumers for the cost of repairing or replacing their Omen laptops. HP's inaction has improperly passed the expense of repairing or replacing the HP Omen laptops along to Plaintiffs and to other proposed Class Members who unknowingly purchased Omen laptops with the Defect.

**THE PARTIES**

6.     Justin Davis is a California citizen.  During the relevant period, Plaintiff Justin Davis purchased an HP Omen Product online, which was shipped to his home address in Newark, California.

7.     Gary Davis is an Illinois citizen.  During the relevant period, Plaintiff Gary Davis purchased an HP Omen Product at the Micro Center in Westmont, Illinois.

8.     Defendant HP is a global Fortune 500 company and one of the world's largest manufacturers and sellers of computers. HP is incorporated in the State of Delaware and its principal place of business is located at 1501 Page Mill Road in Palo Alto, California 94304.

9.     Defendant HP designs, manufactures, markets, and sells HP Omen branded computers, including the defecting Omen laptops at issue.

**JURISDICTION AND VENUE**

10.     This Court has general personal jurisdiction over Defendant HP because HP is headquartered in the state of California.  This Court has specific personal jurisdiction over Defendant HP in this matter because the acts and omissions giving rise to this action occurred in the state of California. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed

3

and/or sold products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and proposed Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant HP was engaged in business activities in the state of California.

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

12.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is headquartered and conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

## INTRADISTRICT ASSIGNMENT

13.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in Santa Clara County, California and this action should be assigned to the San Jose Division.

## COMMON FACTUAL ALLEGATIONS

### A.      HP and the Omen Brand

14.     HP has been in the business of making and selling computers since it released the world's first personal computer, the Hewlett-Packard 9100A, in 1968.[1]  Today, HP is the world's

---

[1] *The First PC*, WIRED, https://www.wired.com/2000/12/the-first-pc/ (last visited February 27, 2023).

**CLASS ACTION COMPLAINT**

second largest vendor of personal computers.[2]  The company is listed on the New York Stock Exchange (HPQ) and is a constituent of the S&P 500 Index.

15.     HP acquired luxury PC maker Voodoo in 2007, and with it the Omen brand. Before its acquisition, Voodoo had reserved the Omen brand for the highest-end PC the company ever created.



*Legacy Voodoo "Omen" PC with branding logo on top of the tower.[3]*

Trading on Voodoo's reputation for high-quality luxury computers and leveraging HP's own long history and market dominance, HP re-introduced the Omen brand in a new line of gaming laptops in 2016.[4]

---

[2] *See* https://www.gartner.com/en/newsroom/press-releases/2021-01-11-gartner-says-worldwide-pc-shipments-grew-10-point-7-percent-in-the-fourth-quarter-of-2020-and-4-point-8-percent-for-the-year (last visited February 27, 2023).
[3] *Available at* https://www.reddit.com/r/VoodooPC/comments/qf6jsr/voodoo_omen_restoration_w_z390_dark _9900ks_3080/ (last visited March 1, 2023).

[4] HP Reinvigorates Omen Gaming Brand With New Design, desktops and Logo, Forbes, https://www.forbes.com/sites/moorinsights/2020/05/15/hp-reinvigorates-omen-gaming-brand-with-new-design-desktops-and-logo (last visited March 1, 2023).

**CLASS ACTION COMPLAINT**



*Omen laptop showcased in media coverage announcing the brand's launch.*



*Omen desktops showcased in media coverage announcing the brand's launch.[5]*

16.     HP's marketing gimmick worked.   By retooling Voodoo's old branding and touting a premium gaming experience for an affordable price, HP's Omen computers were able

---

[5] *Available at* https://www.theverge.com/2016/5/26/11774332/hp-omen-gaming-line-announced-laptops-desktop-tower-accessories (last accessed March 1, 2023).

**CLASS ACTION COMPLAINT**

to quickly pick up market share.  HP then quickly moved to further increase brand awareness in the gaming space with aggressive e-sports sponsorships.[6]

17.     HP sells the Omen PCs on HP.com generally at prices ranging from $899 to $1,699.  The company also advertises the brand on its own website, omen.com, where it touts Omen laptops as "the best gaming laptop":



*Banner at the top of the web page located at: omen.com/us/en/laptops.html.*

18.     Furthermore, on Defendant's own website, HP.com, the company advertises Omen laptops as "ready to go wherever you are" with "desktop levels of power."[7]

19.     Indeed, marketing the Omen Laptops as gaming laptop represents that the computer will be well suited for computer gaming.  In addition to higher-end graphics and responsiveness, gaming laptops need superior input controls (such as keyboards and trackpads) so that consumers play games that require rapid movements and quick reactions.

20.     Accordingly, based on Defendant's "gaming" and other representations, a reasonable consumer would understand that the Omen Laptops have a trackpad that would allow for basic gaming functionality.

---

[6] *How HP Is Connecting Its Omen Brand With Esports Fan*, ALIST DAILY, https://www.alistdaily.com/strategy/hp-connecting-omen-brand-esports-fans/ (last visited March 1, 2023).

[7] *See* https://www.hp.com/us-en/shop/pdp/omen-by-hp-laptop-16t-k000-594k3av-1 (last visited March 1, 2023).

7

**B.      HP Omen's Defective Trackpads**

21.      The HP Omen Laptops, however,  have failed to live up to the hype.  As discussed herein, the Omen Laptops at issue have severe trackpad infirmities, frequently rendering the laptop completely unusable.

22.      HP Omen Laptops, because of their demonstrably defective trackpads, cause user input errors; freezing; erratic cursor behavior which can move in other directions despite user input; and even locks up the system.

23.      Because computer operating systems like the HP Omen Laptop product line use and rely on a "graphical user interface," *i.e.* visual windows, folders and files that can be moved and accessed with trackpad movements and clicks, the crippling trackpad Defect renders the Products virtually unusable.  But this is particularly true for "gamers."  Unlike basic computer operations, gamers use their Omen Laptops to make rapid and precise movements in various games.  Indeed, it is hard to imagine any modern computer game that does not require mouse inputs.  Without a functional trackpad, the Omen Laptops are not suited for gaming or even basic computer operations.

24.      Consumers reaching out to HP for technical support are often put through a frustrating, painstaking, and ultimately unsuccessful series of tasks—asked by HP representatives to update drivers, reinstall the computer's Operating System, or other generic troubleshooting solutions that do not fix the problem or only fix it temporarily.

25.      The defective Omen Laptops can only be used with an external mouse connected through USB or Bluetooth.  Such solutions are worse than a band-aid, however, because the purpose of a laptop is to be convenient and <u>portable</u>.  Indeed, HP understands this and emphasizes it in its representations that the Omen Laptops are "ready to go wherever you are."  Not every consumer owns an external mouse, and the necessity to purchase one to use this purportedly high-end, portable Product is not only not disclosed, but imposes unnecessary and unexpected costs upon consumers.  Further, it reduces the number of USB ports available on the Omen Laptops, further diminishing the product's usability.

**CLASS ACTION COMPLAINT**

**C.      Consumer Complaints About the HP Omen Laptops**

26.      Beginning in 2022, numerous consumers began to complain of serious trackpad issues with their HP Omen laptops.  In March of 2022, one consumer complained of persistent trackpad issues, which the consumer could temporarily fix by closing and opening back up the laptop, but, according to the consumer, "it will usually go back to being unresponsive after a good 15/20 minutes."



27.      One Reddit user responded that "[t]his is a very common problem [with] Omen 16 and 17" and noting HP's lack of a response to the problem:



28.      Indeed, there are numerous threads on the HP help forums with consumers seeking assistance in fixing trackpad issues associated with their HP Omen Laptop.  One

---

[8] *Available at*
https://www.reddit.com/r/GamingLaptops/comments/tb2ky7/hp_omen_trackpad_issues/ (last visited March 1, 2023).

[9] *Id.*

**CLASS ACTION COMPLAINT**

consumer experienced his HP Omen Laptop's trackpad "lagging and not responding" and "stops responding to left clicks":

Posted on 01-06-2022 10:13 AM                                    [10]

**Product:** Omen 16
**Operating System:** Microsoft Windows 11

I got a new Omen 16 on Xmas Eve and a little over a week after using it the Touchpad started lagging and not responding. I'm doing casual tasks like checking my email to playing some easy-going point-and-click games, the Touchpad suddenly lags, slows down, and stops responding to left clicks. It doesn't respond unless I close and open my laptop. What I've tried so far:

1. I've gone to HP Support Assistant and launched Optimize your performance. I've also launched Check your operating system and Run hardware diagnostics->Components Test and did the Drag and Drop Test and Pointer Test.

2. I've gone to Touchpad Settings and increased Speed and set it to low Sensitivity without results.

The thread has over 14,000 views and 54 replies, many of which are other consumers echoing the poster's issues with their HP Omen Laptop.

29.     Numerous other threads on HP's help forums echo the same issues.  They also demonstrate that, in the rare cases where a consumer reported that HP agreed to take the Omen Laptop back in for maintenance, the Omen Laptop had to go in for maintenance multiple times before the problem was resolved, if it was ever resolved at all:

---

[10] *Available at* https://h30434.www3.hp.com/t5/Gaming-Notebooks/Omen-16-Touchpad-lagging/td-p/8263108 (last visited March 1, 2023).

CLASS ACTION COMPLAINT

11

Posted on 08-14-2022 02:43 PM

**Product:** OMEN 16.1 Inch Gaming Laptop PC 16-B0000 (2W6B3AV)

The previous topic (Solved: Omen 16 Touchpad lagging - Page 5 - HP Support Community - 8263108) was closed, and I wanted to write an update.
The touchpad started acting strange from day one, and after some troubleshooting, I had to send it to maintenance.
After the first maintenance (from the papers, new motherboard and "system reset", in fact, downgrade to win 10), the issue was not fixed at all!

I've filmed my touchpad not working and got in touch with the national support of hp.

It was reviewed and they gave me as only option to send it again to maintenance. Probably, this time they had some internal comunications, and the pc came with a new touchpad(even with the protective plastic), new pcb and (honestly I doubt about this) a new motherboard.

Now it is finally working, and I hope for a very long time.

So for everyone out there, if you're still under warranty, do your best to make sure the support really addresses the issue, they can fix it after all.

Best wishes!

30.    In addition to these threads, there are countless Reddit posts recounting users' experiences with the Defect.  At the time of filing, there were at least 8 different Reddit posts with more than 200 comments, many of which were other Reddit users echoing the fact that their HP Omen Laptops also suffered from the Defect.[12]

[11] *Available at* https://h30434.www3.hp.com/t5/Gaming-Notebooks/Omen-16-Touchpad-lagging-2/m-p/8456255 (last visited March 1, 2023).

[12] *See, e.g.,*
https://www.reddit.com/r/HPOmen/comments/wp7tkh/hp_omen_16_touchpad_issue_guaranteed_fix/;
https://www.reddit.com/r/HPOmen/comments/wa4f1h/solve_the_touchpad_issue_of_omen_laptop/;
https://www.reddit.com/r/GamingLaptops/comments/vs5p73/any_fix_for_touchpad_issues_with_the_hp_omen_16/;
https://www.reddit.com/r/GamingLaptops/comments/tb2ky7/hp_omen_trackpad_issues/;
https://www.reddit.com/r/HPOmen/comments/wfvs99/omen_16_touchpad_issues_fixed_via_software_update/;

**CLASS ACTION COMPLAINT**

31.     Plaintiffs believe that this problem was known to HP even before the products were sold to consumers.  Plaintiffs understand that Defendant designed and tested the Omen Laptops, including the trackpad.  Accordingly, HP knew or should have known about the Defect, before the Products were offered for sale.

32.     HP has yet to acknowledge the breadth of the problem, and  has only addressed a minority of individual consumers' issues after being pressed by consumers to do so.  Most Omen Laptop owners have resorted to using an external mouse and permanently disabling the trackpad. As described above, however, this significantly reduces the Laptop's portability, a central feature consumers look for in laptop PCs.

33.     Because HP has not adequately addressed this widespread problem, and because the Defect affects the Product's functionality so significantly, some owners have resorted to desperate measures.  One Reddit user even posted a guide to take off the laptop's casing, temporarily remove internal components, and wrap a wire to specific metal "risers" inside of the Laptop to release static charge.[13]  The guide has nearly 50 comments, some of which confirmed that the elaborate fix worked.

34.     Indeed, such a fix is far too advanced for the average consumer to attempt, and doing so may run the risk of voiding that consumer's warranty.

35.     HP designed and manufactured the defective Laptops and HP has the capability and obligation to fix the Defect.

---

https://www.reddit.com/r/HPOmen/comments/vs5n7l/did_hp_ever_fix_the_touchpad_issues_with_their/;
https://www.reddit.com/r/HPOmen/comments/swa36d/how_badfrequent_is_the_omens_trackpad_issue_really/;
https://www.reddit.com/r/HPOmen/comments/zo04wg/fixed_my_trackpad_why_tf_is_hp_like_this/ (last visited March 1, 2023).

[13] *See* https://www.reddit.com/r/HPOmen/comments/vs5n7l/comment/ikf0fo8 (last visited March 1, 2023).

**CLASS ACTION COMPLAINT**

**D.    Plaintiffs' Experience with the HP Omen Laptops**

***Plaintiff Justin Davis***

36.    Plaintiff Justin Davis purchased his HP Omen 16.1" R5 5600H Gaming Laptop from MDG, an online retailer, on April 18, 2022 for $1,899.00 (plus tax).  Plaintiff Justin Davis's order was placed from and shipped to his home in Newark, California.

37.    Within the first week of owning and operating his Omen Laptop and after using the laptop only a handful of times, the trackpad on Plaintiff Justin Davis's Laptop began to malfunction.  The Defect has rendered Plaintiff Justin Davis's laptop unusable without an external mouse, which he is required to bring along with his laptop wherever he travels.

38.    Plaintiff Justin Davis routinely needs use of a laptop computer on the go.  On a daily basis, he needs to use his Laptop for work and for personal use without the benefit of a desk or adequate space to use an external mouse.  Plaintiff Justin Davis expected when he spent nearly $2,000 on a premium branded laptop that he would be able to use it for its intended purpose—to operate as a powerful and highly functional Laptop PC on the go.

39.    Plaintiff Justin Davis was confounded by HP's inaction in addressing or even acknowledging the Defect and concluded that HP would not fix the Defect.  Furthermore, he was concerned he would be without a laptop for some time, essential to his livelihood, while HP attempted to perform maintenance on the Laptop.  Plaintiff Justin Davis continues to use his Omen Laptop but without a functional trackpad.

40.    To date, the HP Omen Laptop trackpad remains defective. It does not work as intended because the cursor either fails to move, moves on its own, or otherwise fails to appropriately respond to Plaintiff Justin Davis's inputs, and the clicking function degrades until it becomes useless.

41.    Due to the Defect, Plaintiff Justin Davis has never had a fully functional HP Omen Laptop.  His Omen Laptop is worth significantly less than the purchase price of $1,899  because it does not have a functional trackpad and therefore does not work as a PC computer without an external mouse.

42.    Had Plaintiff Justin Davis known the Omen Laptop was defective, he would never

have purchased it or he would have paid substantially less.  Furthermore, while Plaintiff Justin Davis would like to consider purchasing an Omen Laptop in the future, he cannot consider any Omen Laptop unless he can be sure HP has put in place the necessary quality control protocols to ensure future models do not suffer from the same Defect or a similar one.

### *Plaintiff Gary Davis*

43.     Plaintiff Gary Davis purchased his HP Omen 17.3" Intel i7 Gaming Laptop from Micro Center, a retailer of computers and computer components, in Westmont, Illinois on January 30, 2022 for $1,199.99 (plus tax).

44.     Soon after purchasing his Omen Laptop and after using the laptop only a handful of times, however, the trackpad on Plaintiff Gary Davis's Laptop began to malfunction.  The Defect has rendered Plaintiff Gary Davis's laptop unusable without an external mouse, which he is required to bring along with his laptop wherever he travels.  The need to use an external mouse with Plaintiff's Laptop also negates the intended portability of his Laptop because he cannot comfortably use the laptop with a mouse while traveling.

45.     Due to the Defect, Plaintiff Gary Davis has never had a fully functional HP Omen Laptop.  The Omen Laptop is worth significantly less than the purchase price of $1,199.99 that he paid for it because it does not have a functional trackpad and therefore does not work as intended or expected.

46.     Plaintiff Gary Davis searched online for potential solutions or recourse for the Defect, and he was disheartened to conclude based on other Omen owners' experiences that HP would likely instruct him to engage in futile troubleshooting attempts rather than agree to replace the Laptop or the Defective component or components.  In particular, Plaintiff found many other users with the Defect reporting that after sending their laptops in for repair, the repaired or new machine they received still suffered from the Defect.  Plaintiff's search also led him to conclude the Defect, or similar defects, have been present on other HP laptop models for some time and HP has not acknowledged or fixed these problems.  Thus, Plaintiff had no confidence HP would fix his Defect even if he reached out the company, and he has resigned himself to using the Defective Laptop with an external mouse—a requirement that inconveniences him and

14

diminishes the user experience and overall usability of his Omen Laptop.

47.   To date, the HP Omen Laptop trackpad remains defective. It does not work as intended because the cursor either fails to move, moves on its own, or otherwise fails to appropriately respond to Plaintiff Gary Davis's inputs, and the clicking function degrades until it becomes useless.

48.   Had Plaintiff Gary Davis known the Omen Laptop was defective, he would never have purchased it or he would have paid substantially less.  Furthermore, while Plaintiff would like to consider purchasing an Omen Laptop in the future, he cannot consider any Omen Laptop unless he can be sure HP has put in place the necessary quality control protocols to ensure future models do not suffer from the same Defect or a similar one.

## CLASS ACTION ALLEGATIONS

49.   Plaintiffs bring this action on behalf of themselves and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**National Class**: During the fullest period allowed by law, all persons who purchased the Products in the United States for personal use and not for resale.

**California Sub-Class**: During the fullest period allowed by law, all persons who purchased the Products in the State of California for personal use and not for resale.

**Illinois Sub-Class**: During the fullest period allowed by law, all persons who purchased the Products in the State of Illinois for personal use and not for resale.

50.   Excluded from the Classes are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

51.   Plaintiffs reserve the right to amend the definition of the Classes if discovery or

CLASS ACTION COMPLAINT

further investigation reveals that the Classes should be expanded or otherwise modified.

52.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not tens of thousands, of proposed Class Members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

53.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

     a.  Whether Defendant provided Plaintiffs and Class Members with HP Omen Laptops containing the Defect;

     b.  Whether the Defect would be considered material by a reasonable consumer;

     c.  Whether Defendant had a duty to disclose the Defect;

     d.  Whether Defendant's actions and/or omissions violate California law;

     e.  Whether Defendant's actions and/or omissions violate Illinois law;

     f.  Whether Defendant breached express and/or implied warranties;

     g.  Whether Defendant was unjustly enriched through its wrongful acts;

     h.  Whether Plaintiffs are entitled to monetary damages and, if so, the nature of such relief; and

     i.  Whether Plaintiffs and members of the proposed Class are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

54.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the proposed Classes as a whole.

55.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are

**CLASS ACTION COMPLAINT**

typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Products and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiffs share the aforementioned facts and legal claims or questions with proposed members of the Classes, and Plaintiffs and all members of the proposed Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all members of the proposed Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of the Defect, as alleged herein.

56.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed Classes. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs do not have any conflicts of interest or interests adverse to those of the proposed Classes.

57.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

58.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

59.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

   a.   The damages suffered by each individual members of the proposed Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

   b.   Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

   c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

   d.   Individual joinder of all members of the Classes is impracticable;

   e.   Absent a Class, Plaintiffs and members of the proposed Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

   f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the proposed Classes can seek redress for the harm caused by Defendant.

   g.   In the alternative, the Classes may be certified for the following reasons:

      i.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

      ii.   Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the proposed Classes who are not parties to the adjudication and may substantially impair or impede the ability of other proposed Class Members to protect their interests; and

CLASS ACTION COMPLAINT

iii.  Defendant has acted or refused to act on grounds generally applicable to the members of the proposed Classes, thereby making appropriate final and injunctive relief with respect to the proposed Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**
**(Plaintiff Justin Davis on Behalf of the California Sub-Class)**

60.     Plaintiff Justin Davis re-alleges and incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

61.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

62.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

63.     <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL for at least the following reasons:

a.  Violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

b.  Violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and

c.  Breaching express and implied warranties.

64.     <u>Unfair</u>: Defendant's conduct was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. Defendant marketed and Plaintiff Justin Davis and proposed California Class Members agreed to purchase fully functional HP Omen Laptops free of defects such as the Defect.  Instead, they received defective Omen Laptops with partially functional or entirely non-functional trackpads.

65.     Defendant's conduct was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited

19

to the applicable sections of: the Consumers Legal Remedies Act and the False Advertising Law.

66.  Defendant's conduct was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

67.  <u>Fraudulent</u>: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

68.  As set forth herein, Defendant's marketing of the HP Omen Laptops is likely to mislead reasonable consumers to believe the HP Omen Laptops are fully functional, premium and high-end gaming laptops free of defects including the Defect.

69.  HP engaged in this conduct to gain an unfair commercial advantage over its competitors.  Defendant withheld critical and material information from Plaintiff Justin Davis and California Sub-Class Members, competitors and the marketplace, all to their unfair competitive advantage. Thus, consumers are not able to avoid the injury described herein.

70.  As a direct and proximate result of HP's unfair, unlawful and fraudulent acts and practices, Plaintiff Justin Davis and California Sub-Class Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing the devices, and increased time and expense in dealing with the devices' performance issues.

71.  Plaintiff Justin Davis and the California Sub-Class do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful omissions. Damages will only address past injuries visited on Plaintiff Justin Davis and the California Sub-Class. Only injunctive relief can prevent any future harm. For example, Defendant can remedy the hardware or software issues that cause the Defect at issue, and Defendant can implement new quality control procedures designed to ensure the Defect and other similar defects are not present in future laptop PCs.  Plaintiff Justin Davis and the California Sub-Class would like to be able to consider purchasing HP computers in the future, but without such remedies Plaintiff Justin Davis and the California Sub-Class could not trust that Defendant HP had ensured its PCs were of adequate quality and free from defects including the Defect.

72.  Additionally, Plaintiff Justin Davis seeks restitution if monetary damages are not

20

available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 827 (9th Cir. 2014) (same); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

73.     But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff Justin Davis and the California Sub-Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007), as modified (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

74.     Plaintiff Justin Davis and California Sub-Class Members seek all monetary and non-monetary relief allowed by law, including restitution stemming from HP's unfair, unlawful and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

**COUNT II**
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(Plaintiff Justin Davis on Behalf of the California Sub-Class)**

75.     Plaintiff Justin Davis repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

76.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal

**CLASS ACTION COMPLAINT**

property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

77.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

78.     As alleged herein, HP committed acts of false and misleading advertising, as defined by the FAL, by marketing the HP Omen Laptops as fully functional, portable and convenient, high-performance gaming laptops free of defects like the Defect. HP knew or should have known that its claims are misleading and/or false.

79.     HP knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase HP's Omen Laptops.

80.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

81.     Plaintiff Justin Davis and the California Class suffered injury in fact as a result of HP's actions as set forth herein because they purchased the Products in reliance on HP's false and misleading representations.

82.     HP's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because HP has advertised the Products in a manner that is untrue and misleading, which HP knew or reasonably should have known, and omitted material information from its advertising.

83.     HP profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

84.     Plaintiff Justin Davis and the California Sub-Class do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful omissions. Damages will only address past injuries visited on Plaintiff Justin Davis and the California Sub-Class. Only injunctive relief can prevent any future harm. For example, Defendant can remedy the hardware or software

**CLASS ACTION COMPLAINT**

issues that cause the Defect at issue, and Defendant can implement new quality control procedures designed to ensure the Defect and other similar defects are not present in future laptop PCs. Plaintiff Justin Davis and the California Sub-Class would like to be able to consider purchasing HP computers in the future, but without such remedies Plaintiff Justin Davis and the California Sub-Class could not trust that Defendant HP had ensured its PCs were of adequate quality and free from defects including the Defect.

85.     Additionally, Plaintiff seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. *Cortez*, 23 Cal.4th at 177 (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez*, 589 F. App'x at 827 (same); *Caro*, 18 Cal. App. 4th at 661 ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

86.     But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the California Sub-Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe*, 150 Cal. App. 4th at 68 (2007) (noting that restitution is available even in situations where damages may not be available).

87.     Plaintiff Justin Davis and California Sub-Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

**CLASS ACTION COMPLAINT**

1

2

3

## COUNT III
### California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (Plaintiff Justin Davis on Behalf of the California Sub-Class)

4       88.     Plaintiff Justin Davis repeats and realleges the allegations in the previous

5   paragraphs as if fully set forth herein.

6       89.     The CLRA prohibits deceptive practices in connection with the conduct of a

7   business that provides goods, property, or services primarily for personal, family, or household

8   purposes.

9       90.     HP's false and misleading labeling and other policies, acts, and practices were

10  designed to, and did, induce the purchase and use of the Products for personal, family, or household

11  purposes by Plaintiff Justin Davis and California Class Members, and violated and continue to

12  violate the following sections of the CLRA:

13          a. § 1770(a)(5): representing that goods have characteristics, uses, or

14  benefits which they do not have;

15          b. § 1770(a)(7): representing that goods are of a particular standard,

16  quality, or grade if they are of another;

17          c. § 1770(a)(9): advertising goods with intent not to sell them as

18  advertised; and

19          d. § 1770(a)(16): representing the subject of a transaction has been

20  supplied in accordance with a previous representation when it has not.

21      91.     Defendant profited from the sale of the falsely, deceptively, and unlawfully

22  advertised Products to unwary consumers.

23      92.     Defendant's wrongful business practices constituted, and constitute, a continuing

24  course of conduct in violation of the CLRA.

25      93.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff Justin Davis

26  provided a letter to Defendant on March 30, 2023 with notice *inter alia* of its alleged violations of

27  the CLRA, demanding that Defendant correct such violations, and providing it with the

28  opportunity to correct its business practices. HP did not respond to Plaintiff's letter or otherwise

24

act to correct its unlawful practices.  Plaintiff Justin Davis thus seeks monetary relief, including restitution and actual damages, under the Consumers Legal Remedies Act.  The letter is attached hereto as **Exhibit 1**.

94.     Pursuant to California Civil Code § 1780, Plaintiff Justin Davis seeks injunctive relief, his reasonable attorney fees and costs, and any other relief that the Court deems proper.

**COUNT IV**
**Illinois Consumer Fraud and Deceptive Trade Practices Act**
**815 ILCS 505/1, *et seq.* ("ICFA")**
**(Plaintiff Gary Davis on Behalf of the Illinois Sub-Class)**

95.     Plaintiff Gary Davis repeats and re-alleges the allegations above as if set forth herein.

96.     Plaintiff Gary Davis and other Class Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

97.     Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

98.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f). 183.

99.     Plaintiff Gary Davis and the proposed Illinois Sub-Class are "consumers" who purchased the Products for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

100.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

101.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. Plaintiff Gary Davis and the other Illinois Sub-Class Members reasonably relied upon Defendant's representation that the Products were suited for their intended use and, due to Defendant's omission, Plaintiff and Illinois Sub-Class Members relied on

**CLASS ACTION COMPLAINT**

Defendant's labeling and advertising to conclude that the Products were free from defects including the Defect.

102.   Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq*.

103.   Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have, namely that they are fit for their intended use and free from defects including the Defect. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

104.   Defendant advertised the Products with intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

105.   Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

106.   Defendant engaged in misleading and deceptive advertising that represented that the Products were fit for their intended use and free from defects including the Defect.  Defendant chose to advertise the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to and would be impacted by its omission and would reasonably believe that the Products were fit for their intended use as high-performance laptops and free from defects, including the Defect. However, the Products are not fit for their intended use and they are not free from defects because they suffer from the Defect.

107.   Defendant intended that Plaintiff Gary Davis and each of the other Illinois Sub-Class Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Products.

108.   Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff Gary Davis and each of the other Illinois Sub-Class Members to be deceived about the true nature of the Products.

109.    Plaintiff Gary Davis and Illinois Sub-Class Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Products.

110.    Had they been aware of the true nature of the Products, Plaintiff Gary Davis and Illinois Sub-Class Members either would have paid less for the Products or would not have purchased them at all.

111.    On March 30, 2023, prior to filing this action, Plaintiff Gary Davis sent Defendant a pre-suit notice letter noticing Defendant *inter alia* of its violations of the ICFA described herein, and demanded that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom. HP did not respond to Plaintiff's letter or otherwise act to correct its unlawful practices.  Plaintiff Gary Davis thus seeks monetary relief under the ICFA. A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT V**
**Breach Of Express Warranty**
**(Plaintiffs on Behalf of the National Class)**

112.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

113.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

114.    In connection with the sale of the Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, issued written warranties by representing that the Products were high-performance gaming laptops free from defects including the Defect.

115.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and the Classes have been injured and harmed because they would not have purchased the Products on the same terms if they knew that the Products contained the Defect.

116.    On March 30, 2023, prior to filing this action, Plaintiffs sent Defendant a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiffs' counsel sent Defendant a letter advising Defendant, *inter alia*, that it breached an express warranty, and

**CLASS ACTION COMPLAINT**

demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom. HP did not respond to Plaintiffs' letter or otherwise act to correct its breach of warranty.  Plaintiffs thus seeks monetary relief for HP's breach of contract. A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT VI**
**Breach Of Implied Warranty**
**(Plaintiffs on Behalf of the National Class)**

117.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

118.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

119.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products (i) were high-performance, portable gaming laptops and (ii) were free from defects including the Defect.

120.    Defendants breached the warranty implied in the contract for the sale of the defective Products because they could not pass without objection in the trade under the contract description, the Products were not of fair or average quality within the description, and the Products were unfit for their intended and ordinary purpose because the Products manufactured, distributed, and sold by Defendant contained the Defect. As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

121.    Plaintiffs and members of the Classes purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

122.    The Products were not altered by Plaintiffs or members of the Classes.

123.    The Products were defective when they left the exclusive control of Defendant.

124.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiffs and members of the Classes.

CLASS ACTION COMPLAINT

**COUNT VII**
**Unjust Enrichment**
**(In the Alternative, and on Behalf of the National Class**
**and/or California and Illinois Sub-Classes)**

125.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

126.    Plaintiffs bring this cause of action on behalf of themselves, and the proposed Classes against Defendant.

127.    Plaintiffs and proposed Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein Defendant was unjustly enriched at the expense of Plaintiffs and proposed Class Members.

128.    Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

129.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and proposed Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

130.    Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant marketed, advertised, distributed, and sold the Products, and HP misrepresented the nature of the Products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Products as high-performance, portable gaming laptops free from defects including the Defect, which caused injuries to Plaintiffs and the Classes because they would not have purchased the Products if the true facts concerning the Products had been known.

131.    Plaintiffs and proposed Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the

**CLASS ACTION COMPLAINT**

Products on the same terms or for the same price had they known the true nature of the Products and the mis-statements regarding what the Products were and what Defect they contained.

132. Defendant either knew or should have known that payments rendered by Plaintiff and proposed Class Members were given and received with the expectation that the HP Omen Laptops were free from defects including the Defect. It is inequitable for Defendant to retain the benefit of payments under these circumstances because the Omen Laptops are not free from defects.

133. Plaintiffs and the Class do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful omissions. Damages will only address past injuries visited on Plaintiffs and the Class. Only injunctive relief can prevent any future harm. For example, Defendant can remedy the hardware or software issues that cause the Defect at issue, and Defendant can implement new quality control procedures designed to ensure the Defect and other similar defects are not present in future laptop PCs. Plaintiff Justin Davis and the California Sub-Class would like to be able to consider purchasing HP computers in the future, but without such remedies Plaintiff Justin Davis and the California Sub-Class could not trust that Defendant HP had ensured its PCs were of adequate quality and free from defects including the Defect.

134. Additionally, Plaintiffs seek restitution if monetary damages are not available. Indeed, restitution under a theory of unjust enrichment can be awarded in situations where the entitlement to damages may prove difficult.

135. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and the Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe*, 150 Cal. App. 4th at 68 (2007) (noting that restitution is available even in situations where damages may not be available).

136. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under

**CLASS ACTION COMPLAINT**

California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiffs as Class Representative and appointing Plaintiffs' counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class(es);

C. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiffs and the members of the Class(es) except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendant to fully and appropriately recall the Products and/or to implement adequate quality control procedures to ensure future Products are free from defects such as the Defect;

G. Ordering a jury trial and damages according to proof;

H. Awarding Plaintiffs and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

I. Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class(es);

K. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

**CLASS ACTION COMPLAINT**

L.  Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: May 1, 2023                              Respectfully submitted,

*/s/ Trenton R. Kashima*
Trenton R. Kashima, Esq.
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
Email: tkashima@milberg.com

Nick Suciu*
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

Mitchell Breit*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
mbreit@milberg.com

Gary M. Klinger*
Russell Busch*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com
rbusch@milberg.com


*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and Proposed Class*

32

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Trenton Kashima, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Milberg Coleman Bryson Phillips Grossman PLLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if call as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at San Diego, California on this 1st day of May 2023.

*/s/ Trenton R. Kashima*
Trenton R. Kashima

**CLASS ACTION COMPLAINT**